(Decided 16th June, 1869.)

CORNELIUS GREEN *vs.* JOANNA E. DRUMMOND, and others.

*Parol Agreement—Statute of Frauds—Resulting Trust —Jurisdiction in Equity—No Resulting Trust under the 8th Section of the Statute of Frauds where the Contract is Executory and no Conveyance has been made—Power of Courts of Equity to afford Relief in such cases to the Purchaser, by decreeing a Return of the Purchase-money paid by him.*

The real estate of a testatrix was sold by her executors to certain persons, who transferred their rights as purchasers to D. The latter was accepted as purchaser by the executors, and reported as such to the Orphans' Court, and the sale as so reported was ratified by the Court. The purchase was in fact made by D and G jointly, under an oral agreement between them that each was to furnish one-half of the purchase-money, and to hold the property in undivided moieties. G was not a party to the contract with the executors, nor in any manner known to them as purchaser. Under this purchase the cash payment of $10,000 was paid to the executors, and a considerable part of said sum was furnished by G. At the time of the purchase D and G were each tenants respectively of portions of the property purchased, and each remained in possession of the same afterwards. Before the whole purchase-money was paid, D died. On a bill filed by G for an injunction, to restrain the executors from executing a deed for said property to the heirs of D, and to restrain said heirs from accepting such deed, and to restrain the administratrix of D from collecting the rents of said property, and for a receiver to collect said

rents, and praying also that G might be declared the owner of an un-divided moiety of the said property upon payment by him of his pro-portion of the residue of said purchase-money, HELD:

1st. That the complainant was not entitled to claim a specific execution of the agreement between D and himself, that he should become a joint purchaser of the property and hold to the extent of one moiety.

2d. That the complainant was not entitled to relief upon the ground of a resulting or constructive trust in the property under the 8th section of the Statute of Frauds, while the contract of purchase remained execu-tory, and before the conveyance of the legal estate to D.

3d. That the Court had jurisdiction and power to grant relief to the com-plainant by decreeing compensation.

4th. That the measure of compensation to which he was entitled, was a decree as against the personal representative of D for the money paid and expended by him in the purchase of the property, with interest thereon, and in default of payment thereof, out of the personal estate of D, he would be entitled as a general creditor, by proper proceedings for that purpose, to enforce its payment out of the real estate of D in the same manner as any general creditor might do.

APPEAL from the Superior Court of Baltimore City, sitting in Equity.

The bill in this case filed by the appellant alleged that on the 15th day of June, 1865, Benjamin Silver, James Silver, and Silas B. Silver, executors of Susan Pannell, of Harford county, deceased, sold by public auction to Kimberly Brothers, for the sum of $16,000, certain real estate; and that the said Kimberly Brothers "agreed to relinquish their rights as purchasers under said sale in favor of Levin J. Drummond, whereupon Cornelius Green and the said Drummond agreed to become jointly the purchasers of said property, each party to furnish one-half of the pur-chase-money and to hold the same in undivided moieties;" and that Drummond was not able to furnish immediately his portion of the cash payment required by the terms of sale, whereupon the executors, in consideration that $10,000 should be paid shortly thereafter, and the balance in twelve months, with interest from the day of sale,

agreed that the said Drummond should be substituted as the purchaser, and Kimberly Brothers, having consented thereto, the executors reported said Drummond as the purchaser; that of this $10,000, $6,000 was paid by Green and $4,000 by Drummond, and the whole amount of the cash payment was made to the executors on the 29th or 30th of June, 1865, by Green and Drummond; that the sale was duly ratified by the Orphans' Court of Harford County; that in point of fact Drummond was acting as the agent or trustee of Green to the extent of an undivided half part of said premises, although the sale was reported as made to Drummond; that the agreement between Green and Drummond was a verbal one; that Drummond died on the 10th of January, 1866, intestate, leaving a widow, Joanna E. Drummond, and five children; that Green, during the illness of Drummond, called to see him in order to obtain some acdnowledgment of his interest in the property, but was refused admission to his presence by Mrs. Drummond; that Mrs. Drummond was the administratrix of Levin J. Drummond's estate, and she had attempted to collect rent from Green and from other persons occupying the premises in question.

The bill claimed that Green was a joint purchaser with Drummond, and was entitled to a deed from the Silvers for one-half of the property on payment of his proportion of the balance of the purchase-money, which he offered to do; it prayed for an injunction restraining Mrs. Drummond from collecting the rents, and for the appointment of a receiver, and for an injunction restraining the Silvers from making a deed to the heirs of Levin J. Drummond, and restraining said heirs from receiving it.

Mrs. Drummond and her adult children, Sarah and Alabama, answered the bill at length, denying entirely the alleged agreement between Drummond and Green, and stating that the purchase was made by Drummond on the 15th day of June, 1865, was exclusively for his own

use and benefit, and that a written agreement of sale was made between him and the Silvers under their respective hands and seals, setting forth particularly the terms and conditions of said sale, the original of which they filed as a part of their answer. They stated that they never heard during the lifetime of Drummond of any claim on the part of the complainant to the property or any interest therein, and that they believed the same was entirely untrue; that the said Drummond previously to making the purchase, frequently conferred with his wife concerning the same, and always represented to her that he was making the purchase exclusively for his own benefit; that during the last illness of Drummond, Green called twice at his house and saw Mrs. Drummond, but expressed no desire to see Mr. Drummond, and in response to an inquiry by the said Mrs. Drummond, he said he had no business to transact with him, and merely called to make friendly inquiry about his condition; that for many years previously to his death, Drummond rented the premises in question from the owners, and had sub-let a portion of them to Green, and both before and after the purchase, up to his death, had regarded Green as his tenant, and he had been so regarded since that event by the respondents. They further pleaded and relied on the Statute of Frauds.

Three of the children of Drummond were infants, and they answered in the usual way by guardian.

The answer of the Silvers stated that they sold the property in question on the 15th day of June, 1865, to Kimberly Brothers; and a short time after the sale, and between that time and the 30th of June, they learned that Kimberly Brothers relinquished their right and interest under the sale in favor of Levin J. Drummond, and that at the request of the said Kimberlys and Drummond, agreed that Drummond should be substituted as purchaser, in their stead, and the terms of sale were varied, so that Drummond was to pay ten thousand dollars in

cash, and give his note for six thousand dollars, payable in twelve months after the day of sale; that on or about the 30th of June, 1865, a written memorandum or agreement was made between the said Drummond and the Silvers, a duplicate original of which was filed with the answer, and which showed that the contract was made with Drummond alone, that the money was paid by him alone, and that the promissory note was executed by him alone.

They further stated that Drummond, on the 30th of June, 1865, paid the ten thousand dollars, with interest, from the day of sale, and also the proportion of rent and taxes settled as of the day of sale; that they reported Drummond to the Orphans' Court of Harford County as purchaser, and the sale was duly ratified.

They stated that their agreement was made with Drummond alone, and that the whole of the cash payment was made by him, and that they had no contract or understanding whatever with Green, in relation to said real estate, and that he never paid any money to them on account of said purchase, and that they never had any reason to believe that he had or claimed any interest in the purchase, until they were informed by his solicitor, a short time before the filing of the bill in this case.

Evidence was taken by both parties, under a commission, the effect of which is stated in the opinion of this Court.

The Court below, (MARTIN, J.,) passed a decree dismissing the bill with costs, and from this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., NELSON, STEWART and MILLER, J.

*Wm. Pinkney Whyte* and *Wm. Meade Addison*, for the appellant.

This case is not covered by the 4th section of the Statute of Frauds.

It is not alleged that Drummond sold Green anything; only that there was an agreement between Drummond and Green to buy jointly the premises from another party. " By a contract for the sale, purchase or other disposition of the land is intended a contract by which one of the parties parts with the land to the other." *Browne on Statute of Frauds*, 269, *citing* 9 *B. Monroe*, 369.

But if the Statute of Frauds does apply, then the appellant is entitled to relief under the 8th section. *Dyer vs. Dyer*, 1 *Leading Cases in Equity*, 168.

The Statute of Frauds does *not extend* to trusts created by operation of law. *Brothers vs. Porter, et al.,* 6 *B. Monroe*, 106, 110, 111, 112.

*Resulting trusts* would have existed, without any provision to that effect, and they were only provided for from *abundant caution.* 6 *B. Monroe,* 106 ; *Browne on Statute of Frauds,* 84 ; *Hoxie vs. Carr, et al.,* 1 *Sumner,* 189.

But if resulting trusts do not exist, except by force of the 8th section, then it is maintained that the term *conveyance* is not necessarily limited in its signification to a *deed*. It is simply a *mode* of vesting title—of *passing* title *from one* to *another*. In this case there was a sale made by executors under a will, which sale was duly reported to and confirmed by the Orphans' Court of Harford County. A title passed—or, in other words, there was, by such proceeding, a *conveyance* to Drummond—as complete and perfect as if a deed had been given. *Cecil Bank vs. Snively,* 23 *Md.,* 261 ; *Act of* 1865, *ch.* 51.

This Court has decided, in a number of cases, that a judicial sale operated to pass title to the purchaser without *a deed*. *Boring vs. Lemmon,* 5 *H. & J.,* 223 ; *Keys & Heron vs. Goldsborough,* 2 *H. & J.,* 370–1 ; *Barney vs. Patterson,* 6 *H. & J.,* 204 ; *Fenwick vs. Floyd,* 1 *H. & G.,* 174 ;

*See also Remington vs. Linthicum,* 14 *Peters,* 84; *Smith vs. Arnold,* 5 *Mason's C. C. Rep.,* 414.

It has been held by the ablest judges that a judicial sale of an estate took it entirely out of the statute. *Attorney-General vs. Day,* 1 *Vezey, Sr.,* 221.

If the appellant be not entitled to the specific relief prayed for in the bill, he has substantial merits, which ought to be enforced in equity, and the cause should be remanded, under the Act of 1832, ch. 302. *See authorities collected in Mayers' Digest,* 180, 181.

When the specific execution of a parol agreement cannot be decreed in consequence of the Statute of Frauds being relied on, the Court will, if there be no remedy at law, or if it be uncertain and embarrassed, *or under circumstances of special equity,* decree compensation to the extent of the purchase-money paid. *Nelson vs. Hagerstown Bank,* 27 *Md.,* 76.

*H. L. Emmons* and *Wm. Shepard Bryan,* for the appellees.

The case made by the bill is within the Statute of Frauds. *Lamas vs. Bayly,* 2 *Vernon,* 627; *Henderson vs. Hudson,* 1 *Munford,* 510; *Hollida vs. Shoop,* 4 *Md.,* 465; *Ledford vs. Ferrell,* 12 *Iredell,* 285.

The objection is taken in the answer. As the complainant's own pleading shows that he is not entitled to a decree, the bill ought to be dismissed. *Ridgeway vs. Toram,* 2 *Md. Ch. Dec.,* 303; *Chambers vs. Chalmers,* 4 *G. & J.,* 420; *Berry vs. Pierson,* 1 *Gill,* 234–247; *Small vs. Owings,* 1 *Md. Ch. Dec.,* 363.

A resulting trust cannot arise by contract, but only by operation of law. By the 7th and 8th sections of the Statute, all trusts of land must be manifested or proved by writing, except where a *conveyance* is made, by which a trust arises by operation of law. In cases where a trust would have been enforced previous to the Statute, there

must now be writing proving it, except where there has been a conveyance of the legal title, and where the trust arises from that conveyance by implication of law. *Jackson vs. Morse*, 16 *Johnson*, 199 ; 3 *Sugden on Vendors*, 174, note 1; 2 *Leading Cases in Equity*, 173 ; *Lewin on Trusts*, (*chap.* 8, *page* 176,) *and Hill on Trustees*, (*top page* 141,) seem to consider the principle as settled, and every known case implies the same thing. *Page vs. Page*, 8 *New Hampshire*, 187.

There must be some intention to entrap and overreach, and it must be charged in the bill. *Montacute vs. Maxwell*, 1 *Peere Williams*, 618 ; *McCulloch vs. Cowher*, 5 *Watts & Sergeant*, 427–430 ; *Dean vs. Dean*, 6 *Conn.*, 288 ; *Miller vs. Colton*, 5 *Georgia*, 341 ; *Robson vs. Harwell and Wife*, 6 *Georgia*, 589 ; *Gouverneur vs. Elmendorff*, 5 *Johns. Ch. R.*, 79 ; *Eyre vs. Potter*, 15 *Howard*, 42.

Moreover, the implication of law cannot arise in any case where the money was furnished subsequently to the purchase. *Hollida vs. Shoop*, 4 *Md.*, 465.

Nor can the implication arise where the money furnished was not an aliquot portion of the whole purchase-money. *Sayre vs. Townsend*, 15 *Wendell*, 651 ; *White vs. Carpenter*, 2 *Paige's Ch. Rep.*, 238–241 ; *Perry vs. McHenry*, 13 *Illinois*, 227.

The dealings between Drummond and Green amounted to a loan, and no fiduciary relation existed. Green was in no respect the purchaser under the name of Drummond.

BARTOL, C. J., delivered the opinion of the Court.

There can be no doubt that the alleged agreement between Green, the appellant, and Levin J. Drummond, as set out in the bill of complaint, was an agreement within the 4th section of the Statute of Frauds.

The allegation in the bill is, " that Green and Drummond agreed to become jointly the purchasers of the property, each party to furnish one-half of the purchase-

money, and to hold the same in undivided moieties." The purchase was made in the name of Drummond alone, who was reported by the executors as the sole purchaser, and the sale was ratified as made to him. Green being no party to the contract made with the executors, nor in any manner known to them as purchaser; his alleged agreement was made with Drummond, and as stated in the bill, was a mere parol agreement, not evidenced by any writing.

This brings the case precisely within the ruling of this Court in *Hollida vs. Shoop*, 4 *Md.*, 465 ; and within the case of *Parker vs. Bodley*, 4 *Bibb*, 102, which was cited and adopted in *Hollida vs. Shoop*, 4 *Md.*, 474. It is unnecessary to refer to other authorities in support of the position that contracts to purchase land are within the 4th section of the Statute, and can be evidenced only by some note or memorandum in writing, signed by the party to be charged therewith.

If the case of the appellant rested only upon the alleged agreement, he must fail in maintaining his bill upon parol evidence merely. But it has been contended, that upon the pleadings and proof, there was a trust created in favor of the appellant. The effect of the agreement being, as alleged, to charge Drummond, as trustee of the appellant, to the extent of one moiety of the land. Here we are met by the provisions of the 7th section of the Statute, which declares that "all declarations or creations of trusts, or confidences of any lands, &c., shall be manifested and proved by some writing, &c., or else they shall be utterly void, and of none effect."

Under this section, it is not competent to prove by parol an express or conventional trust. As decided in *Dorsey vs. Clarke*, 4 *H. & J.*, 556, "if a party who buys land, agrees by parol to hold it for another, or to give that other the benefit of the purchase upon the payment by him of the purchase-money, such a conventional trust could not be

enforced. It would be within the Statute, and could be evidenced only by writing.

Is this a case of a constructive or resulting trust within the saving of the 8th section of the Statute?

Upon this question we have had more difficulty in arriving at a satisfactory conclusion. It is very clearly established by the evidence, that at the time the arrangement was concluded with the executors, under which Drummond was accepted by them as the purchaser, and $10,000 of the purchase-money was paid, a considerable part of the money so paid was furnished by Green, the complainant; not as a loan to Drummond to be repaid, but as part of the purchase-money, with the intention of securing to Green an interest in the property as part owner.

It has been argued that the effect of this transaction was to create a resulting trust in the property in favor of Green, to the extent or in the proportion of the money so paid or furnished by him; thus bringing the case within the provisions of the 8th section of the Statute. It being well settled that such constructive or resulting trusts, arising by operation of law, may be proved by parol evidence.

The language of the 8th section is as follows:

"Provided always, that where any conveyance shall be made of any lands or tenements, by which a trust or confidence shall, or may arise, or result by the implication or construction of law, or be transferred or extinguished by an act or operation of law, then, and in every such case, such trust or confidence shall be of the like force and effect as the same would have been if this Statute had not been made, anything hereinbefore contained, to the contrary notwithstanding."

One of the classes of trusts coming within the purview of this section is thus defined:

"Where, upon a purchase of property, the conveyance of the legal estate is taken in the name of one person,

while the consideration is given or paid by another, the parties being strangers to each other, a presumptive or resulting trust immediately arises by virtue of the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds." *Hill on Trustees,* 92 *M.* "In such case the payment of the consideration-money may be proved by parol, as before the Statute. The payment of the money is the foundation of the trust." 4 *H. & J.,* 556.

We consider it well settled upon reason and authority, that if a part of the purchase-money be so paid, there will arise in the same manner a resulting trust *pro tanto* in favor of the party so paying. But the question here presented is, whether a trust of this kind can arise upon an executory contract merely; or where there has been no conveyance of the legal title.

The Judge of the Superior Court decided that there being no deed or conveyance of the legal title from the executors to Drummond, a resulting trust could not arise under the 8th section of the Statute.

A very full and careful examination of the authorities has convinced us that the decision of the Judge below on this question is correct.

The words of the Statute seem plainly to apply only to cases where "*a conveyance shall be made of lands.*" Trusts of this description "must arise, if at all, at the time of the execution of the conveyance." In all cases there must be a mutation of the legal title, and the trust arises by operation of law "from contemporaneous circumstances, giving a different direction to the equitable title from that taken by the legal title."

In support of these positions the following authorities may be cited. 3 *Sug. on Vendors,* 174 *n.* 1 ; *Lewin on Trusts, ch.* 8, *p.* 176; *Dyer vs. Dyer,* 2 *Cox,* 92; *Jackson vs. Morse,* 16 *John.,* 199 ; *Murray vs. Rogers,* 3 *Paige,* 398 ;

*Page vs. Page*, 8 *N. H.*, 187; *Baker vs. Vining*, 30 *Maine*, 121; *Dorsey vs. Clarke*, 4 *H. & J.*, 551.

The contract of purchase by Drummond from the executors, and the ratification of the sale by the Orphans' Court, gave him only an equitable interest in the land; to convey the legal estate a deed from the executors is necessary; and until the whole purchase-money is paid they are not bound to execute a deed. While the contract of purchase remained executory and before the conveyance of the legal estate to Drummond, no resulting trust within the meaning of the 8th section of the Statute could arise or be created in favor of Green.

The case of *Cecil Bank vs. Snively*, 23 *Md.*, 253, has been cited, and relied on by the appellant in support of the position that such a trust may arise upon an executory contract of sale, without a conveyance.

In that case an attachment upon judgment against Lee & Welby was laid upon property claimed by Lawrence Snively, under a contract of purchase by him from Price & Ridgway, trustees, to whom it had been conveyed by Lee & Welby, with power to sell.

The evidence was that Snively, though nominally the purchaser, had, in fact, bought for Lee & Welby; that they furnished and paid all the purchase-money, so far as it had been paid, and that Snively stated he claimed no interest in the property, and held the contract only for the benefit of Lee & Welby. The effect of the decision was, that this evidence was sufficient in law to show that Lee & Welby had an interest in the property, liable to the attachment. In the argument of the case the interest of Lee & Welby was treated as a *trust* created by construction or operation of law; no point was made upon the words of the Statute, as to the effect of the absence of a conveyance; in the opinion that fact was not adverted to, and the general principles applicable to such trusts were

stated and discussed, perhaps unnecessarily, as they were not essential to the decision of the case.

There could be no doubt of the right of the attaching creditors to treat the property as in fact belonging to Lee & Welby, who, according to the proof, were the real purchasers; Snively being merely a nominal purchaser, and holding the contract for their benefit. It would have been a fraud upon the creditors to have denied to them the benefit of their attachment.

The judgment in *Cecil Bank vs. Snively* stands upon grounds independent of the 8th section of the Statute of Frauds, and is not in conflict with the principles here announced as governing the construction of the Statute.

It follows from what has been said—

1st. That the appellant is not entitled to claim a specific execution of the agreement, whereby, as alleged in the bill, it was agreed between him and Drummond that he should become a joint purchaser of the property, and hold to the extent of one moiety. Such an agreement, under the Statute of Frauds, can be proved only by writing.

2d. It also follows, for the reasons before stated, that the appellant is not entitled to relief, upon the ground of a resulting or constructive trust in the property, under the 8th section of the Statute.

It remains to be considered whether, under the pleadings and proofs in the cause, the appellant is entitled to any, and what relief in a Court of Equity?

A specific execution of the alleged agreement being denied, the question is, whether the bill should be retained for the purpose of awarding compensation for the purchase-money paid and advanced by him?

It has been said to be a general rule of equity that " no one shall avail himself of a law made for his protection, so as to injure another, and especially, not to enrich himself at his expense." 3 *Rand*, 258.

" The Statute of Frauds was intended to protect parties

against feigned or incomplete agreements.   But when one party induces another, on the faith of a parol contract, to place himself in a worse situation than he would have been if no agreement had existed, and especially if the former derives a benefit therefrom, at the expense of the latter, and avails himself of his legal advantage, he is guilty of a fraud, and uses the Statute for a purpose not intended, the injury of another, for his own profit.   The fraud does not consist in availing himself of the Statute to protect himself; but in using it to appropriate to himself what justly belongs to another."   3 *Rand*, 259.

To prevent such injustice, Courts of Equity, in cases where the party is not entitled to specific performance, often grant relief by decreeing just compensation ; that is, by decreeing the repayment of the money expended on the faith of the contract.   Many cases might be cited in which such relief has been granted.

Some conflict has arisen upon the question as to the particular circumstances under which a Court of Equity will entertain jurisdiction and grant relief, by awarding compensation to a party who fails to maintain his bill for specific performance.   " Such relief," as stated by Judge Story, (2 *Eq. J.*, sec. 794,) " is ordinarily to be decreed in equity only as incidental to other relief sought by the bill and granted by the Court, or where there is no adequate remedy at law, or where some peculiar equity intervenes."

In this case it seems to us doubtful whether the appellant could, by any proceeding at law, recover the money paid and advanced by him under the contract ; for there he would be met by the provisions of the Statute, which would preclude him from giving evidence of such parol contract.

The money not being advanced as a loan to be repaid, but expended in pursuance of the agreement for the joint purchase of land, in order to maintain an action at law to

recover back the money, it would be necessary to prove the contract under which it was paid, which he would be precluded from proving by parol, by reason of the provisions of the Statute, and thus his remedy at law might fail and justice be denied." 3 *Rand*, 259, 260 ; *White, Adm'x. vs. Coombs, Ex'r.*, 27 *Md.*, 489.

In such case, according to the authorities, a Court of Equity ought to give relief, because there is no remedy at law, or a very inadequate and precarious one.

In White & Tudor's Leading Cases in Equity (65 *Law Lib.*, 527), the rule upon which Courts of Equity proceed in such cases is thus stated:

" When the specific execution of a parol agreement cannot be decreed in consequence of the uncertainty in its terms, or of the Statute being relied on, the Court will, if there is no remedy at law, or it is uncertain or embarrassed, or under circumstances of special equity, decree compensation to the·extent of the purchase-money paid, and the value of beneficial and lasting improvements."

This proposition was cited with approbation by the Court of Appeals, in *Bowie vs. Stonestreet*, 6 *Md.*, 431. The relief granted in that case was based upon this principle of equity.

In *Phillips vs. Thompson*, 1 *John., Ch. R.*, 131, and *Parkhurst vs. Van Cortlandt, Id.*, 273, which were bills for specific performance, Chancellor KENT, though denying the relief prayed in the the former because the plaintiff failed in proving the agreement, and in the latter because the proof of the agreement was imperfect, yet retained the bills in both cases, and in one directed an issue of *quantum damnificatus*, and in the other referred the case to a master, to ascertain the amount due for expenditures made on the faith of the contract, so that compensation might be decreed. The case of *Parkhurst vs. Van Cortlandt* was cited by the Court of Appeals in

*Bowie vs. Stonestreet*, and the principles therein asserted were recognized.

The Court of Appeals proceeded upon the same principle in awarding compensation, in the cases of *Eakle vs. Eakle*, decided at April Term, 1867, and in the more recent case of *Nelson vs. Hagerstown Bank*, 27 *Md.*, 52, 76.

We refer also to *Anthony vs. Leftwitch*, 3 *Rand*, 238; *Payne vs. Graves*, 5 *Leigh.*, 561; *Johnston vs. Glancy, and others*, 4 *Blackford*, 94, 99; *King's heirs vs. Thompson and wife*, 9 *Peters*, 204; and to the cases cited by Chancellor KENT, in *Parkhurst vs. Van Cortlandt.*

These authorities sufficiently establish the jurisdiction and power of a Court of Equity to grant relief to the appellant in the present case by decreeing compensation.

The measure of compensation to which he will be entitled is a decree for the money paid and expended by him in the purchase of the property, with interest thereon.

While, in our opinion, the proof is perfectly clear and conclusive that a portion of the cash payment made to the executors was furnished by him, and that the amount so furnished exceeded $3,000, there is an absence of satisfactory evidence with regard to the precise amount thereof, and it will be necessary to refer the case to the Auditor, so that an account thereof may be stated upon the proof now in the cause, and other proof to be taken under the Court's order for that purpose; and for the amount so ascertained, with interest thereon, the appellant will be entitled to a decree as against the personal representative of Levin J. Drummond, deceased; and in default of payment thereof out of the personal estate of Levin J. Drummond, he will be entitled, as a general creditor, by proper proceedings for that purpose, to enforce its payment out of the real estate of said Drummond, in the same manner as any general creditor might do. Inasmuch as we have determined that the property mentioned in the proceedings is not chargeable with any trust in favor of the appellant,

it follows that he is not equitably entitled to any specific lien thereon for the amount so to be recovered by him. But as was decided in the case of *Bowie vs. Stonestreet,* he is to be considered as a general creditor against the assets of the estate for the amount which may ultimately be decreed to be due him, upon the principles before stated.

And forasmuch as the appellant is not entitled to any relief as against the defendants Benjamin Silver, James Silver, and Silas B. Silver, executors, the bill as to them must be dismissed, and the decree of the Superior Court, so far as it dissolved the injunction heretofore granted, ought to be affirmed. But as there was error in dismissing the bill, the decree in that respect will be reversed, and in order that further proceedings may be had in the Court below, in accordance with the opinion of this Court, the cause will be remanded.

*Affirmed in part, and reversed in part,*
*and cause remanded.*

(Decided 24th June, 1869.)